SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY                                                    1 The Circle, Suite 2
                 JUDGE                                          GEORGETOWN, DE 19947

July 27, 2016

John W. Paradee, Esquire              Richard E. Berl, Jr., Esquire
Baird, Mandalas & Brockstedt          Berl & Feinberg, LLP
6 South State Street                  34382 Carpenter's Way
Dover, DE 19901                       Lewes, DE 19958

> RE:   ***Bethany Marina Townhouses Phase II***
>       ***Condominium, Inc. v. BMIG, LLC,***
>       <u>***C.A. No: S15C-01-019 ESB***</u>

Dear Counsel:

This is my decision on the Motion for Summary Judgment filed by Bethany

Marina Townhouses Phase II Condominium, Inc. (the "Association"), and the Motion

for Partial Summary Judgment filed by BMIG, LLC in this dispute over (1) unbuilt

condominium units owned by BMIG, and (2) unpaid condominium fees for boat slips

owned by BMIG. The unbuilt units at the center of this dispute are 51-53, 60-64, and

112-114.

The Bethany Marina Townhouses Phase II Condominium ("Bethany Marina

II") was planned to be an expandable 77-unit condominium on 10.57 acres on

White's Creek in Ocean View, Delaware. The initial condominium declaration

submitted the entire 10.57 acre parcel to the condominium regime, but excepted from

it "the parcels of land required to build the physical additional buildings consisting

of seventy-seven (77) additional units..." The submission of "built units" to the condominium regime was accomplished by preparing an addendum to the declaration and declaration plan submitting the entire 10.57 acre parcel and once again excepting the "parcels of land required to build the proposed additional buildings..." The sixth amendment to the declaration submitted the entire 10.57 acre parcel of land to the condominium regime and stated the following:

> Excepting thereout and therefrom the parcels of land required to build the proposed additional buildings consisting of nineteen (19) additional units as shown on the Declaration Plan recorded among the Land Records of Sussex County, Delaware and identified as follows: Units 51 through 53, Units 60 through 72 and Units 112-114, inclusive.

> And also excepting thereout the "pumping station," "pump house," "pool," "pool house," and "storm water management pond" as shown on said Declaration Plan.

The built and unbuilt units are not described by a metes and bounds description, but they are shown on the declaration plans. BMIG obtained a deed on March 23, 2009, conveying to it all of the original developer's interest and rights in Bethany Marina II and all lands that were not submitted to the Bethany Marina II condominium regime.

The declaration gave the developer the right to expand Bethany Marina II by giving it the right to annex, to be exercised prior to August 29, 2005, the land and improvements constituting the property of Bethany Marina II. This was later

extended to August 29, 2010, by an amendment to the declaration. BMIG did nothing until June of 2014 when it started work on Unit 53. Construction came to a halt when the Association's attorney told BMIG that the time for construction had expired. This litigation followed.

## The Unbuilt Units[1]

BMIG does not dispute that the time for submitting its lands to the Bethany Marina II condominium regime has passed. Instead, BMIG argues that its lands were never submitted to, and are not bound by, the Bethany Marina II condominium regime. Thus, according to BMIG's reasoning, it is not subject to any time limits for construction set forth in the Bethany Marina II condominium documents. I agree. That is exactly what the sixth amendment provides. It clearly excepted from the Bethany Marina II condominium regime the parcels of land required to build units 51-53, 60-72, and 112-114. It also excepted from the Bethany Marina II condominium regime the pumping station, pump house, pool, pool house and stormwater management pond. The Association argues that BMIG's lands are not excepted from the Bethany Marina II condominium regime because it is not possible to determine where BMIG's lands are located because they are not described with a metes and

---

[1] Including the pumping station, pump house, pool, pool house and stormwater management pond.

bounds description. I disagree. While there is no metes and bounds description, BMIG's lands are shown on the declaration plans in sufficient detail to determine where they are located. The Association also argues that BMIG was divested of its lands because the developer only excepted the lands "required to build" the remaining unbuilt units. The Association reasons that since the time for annexing additional lands for built units has expired, that there are no lands "required to build" the remaining units. I disagree. The Bethany Marina II condominium documents simply do not provide for this event. The sixth amendment does except the lands required to build units 51-53, 60-72, and 112-114. The condominium documents never address what is to happen with the excepted lands if they are not annexed in time. However, the condominium documents do provide that for any lands to be annexed into the Bethany Marina II condominium regime that an amendment to the declaration must be prepared and recorded authorizing such annexation. That was never done for these lands. Thus, BMIG owns the lands required to build units 51-53, 60-64, 112-114, and the pumping station, pump house, pool, pool house, and stormwater management free of the Bethany Marina II condominium documents.

## The Easement

BMIG needs access to its lands in order to construct improvements on them. BMIG did acquire the following easement from the original developer:

## GRANT OF EASEMENT

The Grantor does hereby reserve unto itself an easement to construct fourteen (14) buildings and the remaining portion of the first building as delineated on the said Declaration Plan, and all of the necessary parking lots, walks and other appurtenances requisite to service some or all of said fourteen (14) buildings and the remaining portion of the first building and to provide for the necessary ingress and egress to said building.[2]

The Association argues that the easement has lapsed because the time limit for constructing additional buildings has passed. BMIG argues that the easement itself contains no such limitation. "The terms of an easement are often critical in determining its scope, as the language of the easement is the primary guide for the courts."[3]

The easement does grant BMIG the right to construct 14 buildings on the property and all of the necessary parking lots, walks and other appurtenances requisite to service the 14 buildings. The easement itself has no time limitation for construction. Indeed, this easement, by its terms, continues during the existence of the Bethany Marina II condominium. While the other Bethany Marina II condominium documents do have a time limitation for construction, I have concluded that BMIG's unbuilt units are not burdened by that time limitation. Thus, I conclude

---

[2] The easement also provides that it shall be perpetual during the continued existence of the Bethany Marina II condominium.

[3] *Green v. Templin,* 2010 WL 2734147, at *10 (Del. Ch. July 2, 2010).

that the plain and unambiguous language of this easement gives to BMIG the necessary access across the other lands of the Bethany Marina II condominium to construct its units.

## The Assessments for Boat Slips

BMIG purchased 11 boat slips when it acquired its interest in Bethany Marina II. The boat slips are part of the condominium regime and subject to assessments. The Association and BMIG were involved in litigation in 2011 involving a dispute over assessments for the 11 boat slips that the Association was trying to collect from BMIG. The Association and BMIG resolved their dispute by executing a Settlement Agreement and Mutual Release. In addition to agreeing to pay the Association $21,760.00 for assessments for boat slips, BMIG agreed to, among other things, the following:

> Respondent BMIG, LLC agrees to pay all future assessments in a timely manner.

> Respondent BMIG, LLC confirms and agrees that it is obligated to pay, and shall pay, any and all future monthly assessments for the boat slips due and owing under the recorded condominium documents governing the Bethany Marina Townhouses Phase II Condominium units.

BMIG's unpaid assessments for its boat slips was $35,370.41 as of December 31, 2015. BMIG agreed to pay all future assessments for the its boat slips in a timely

6

manner.  I conclude that BMIG has no defense to the Association's claim and that BMIG is indebted to the Association in the amount of $35,370.41, together with all other assessments for the boat slips that have accrued since December 31, 2015.

## Conclusion

The Association's Motion for Summary Judgment is denied.  BMIG's Motion for Summary Judgment is granted in part and denied in part as set forth herein.

IT IS SO ORDERED.

Very truly yours,

/s/ E. Scott Bradley

E. Scott Bradley

ESB/sal
oc:    Prothonotary